# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**MARY JANE BRAUN, et al.,**          CASE NO. 3:22 CV 1525

      Plaintiffs,

      v.          JUDGE JAMES R. KNEPP II

**MEIJER INC., et al.,**

      Defendants.          **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Before the Court are Cross-Motions for Summary Judgment filed by Thrifty Retail Services, LLC ("Thrifty") and Meijer Stores Limited Partnership ("Meijer") (Doc. 46) and Adecco USA, Inc. ("Adecco") (Doc. 48). Both motions are fully briefed. Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons set forth below, the Court grants Adecco's Motion and grants in part and denies in part Thrifty and Meijer's Motion.

## BACKGROUND

This case arises out of an August 2, 2020, incident when Plaintiffs Mary Jane Braun and Robert L. Braun were shopping at a Meijer store in Lima, Ohio. (Doc. 8, at ¶ 12). The Amended Complaint alleged an unknown employee (now identified as Salvatore Marzulli) struck Mrs. Braun with a stocking cart. *Id.* at ¶¶ 24-25. Mrs. Braun testified that after she was struck and pushed to the ground, she looked up and saw a cart filled with cases of drinks being pushed by an employee. (Mary Braun Depo., at 34-35).[1]

---

1. Mary Braun's deposition transcript is located at ECF Doc. 45-3.

Relationship Between the Parties

Meijer owns the store where Mrs. Braun was injured. Thrifty is a retail services contractor which provides in-store merchandising exclusively to Meijer. (Deposition of Gina Bosch, Thrifty's People Operations Manager and corporate designee., at 8).[2] In this role, Thrifty's teams work in Meijer stores to stock shelves, organize product displays, and perform other merchandising tasks. (Deposition of Jacob Schlaud, Adecco's Area Operations Manager in Indiana and Ohio, at 22).[3] Thrifty has managers in every Meijer location to oversee these operations. (Bosch Depo., at 13). Adecco is a staffing agency (Schlaud Depo., at 13). Relevant to this case, Adecco would, at the request of Thrifty, assign Thrifty employees, or "Associates" to perform work under Thrifty's operational supervision. (Doc. 46-1, at 4).

Procedural History

The Brauns filed suit in Allen County Common Pleas Court against Meijer,[4] a John Doe employee, and various John and Jane Doe corporate entities, asserting negligence claims after Mrs. Braun was injured in the Lima Meijer store. *See* Doc. 1. Meijer removed the case to this Court on August 29, 2022. *Id.*  In its answer, Meijer denied the allegation that Salvatore Marzulli, the individual who struck Mrs. Braun with a stock cart, was employed by Meijer. *See* Doc. 3.

The Brauns later filed an Amended Complaint, adding Thrifty as a Defendant. (Doc. 8). In its answer, Thrifty also denied employing Marzulli. *See* Docs. 12 and 13. Additionally, Thrifty

---

2. Gina Bosch's deposition transcript is located at ECF Doc. 45-1. All citations herein to this deposition transcript are to the internal deposition transcript page number, not the ECF filing page number.
3. Jacob Schlaud's deposition transcript is located at ECF Doc. 45-2.
4. Plaintiffs originally sued "Meijer, Inc." and "Meijer Stores Limited Partnership." *See* Doc. 1, at 3. Only Meijer Stores Limited Partnership remains a Defendant in the case at this juncture. *See* Doc. 8.

filed a third-party Complaint against Adecco asserting negligence, *respondeat superior*, and indemnification; Thrifty contends Adecco was Marzulli's employer. *See* Doc. 14.

In its answer to Thrifty's third-party Complaint, Adecco asserted cross claims for contribution and indemnification against Thrifty and Meijer, and contractual indemnity solely against Thrifty. *See* Doc. 21.

In July 2024, the Brauns settled their claims against Meijer, Thrifty, and Adecco. *See* Doc. 41. Thus, the remaining claims at issue in the Cross-Motions for Summary Judgment are: Thrifty's claims of negligence, *respondeat superior*, and indemnification against Adecco; Adecco's claims for contribution and indemnity against Thrifty and Meijer; and Adecco's claim for contractual indemnity against Thrifty.

<u>Relationship Between Adecco and Thrifty</u>

At the time in question, Adecco had a Client Service Agreement with Thrifty (the "Agreement") to "assign certain of [Adecco's] employees ('Associates'), with the skills [Thrifty] requests, to do [Thrifty's] work under [Thrifty's] operational supervision." (Doc. 46-1, at 4).

Regarding Marzulli, the employee at issue in this case, Thrifty sent Adecco a job description for a merchandiser position, and instructed Adecco as to what type of employee it was looking for and what kinds of work the merchandiser would be doing. (Bosch Depo., at 15). The job description states: "[t]he position is the primary merchandising and project service resource in store and responsible for high volume product merchandising" and entails "stocking shelves, rotating shelved product, setting up displays, stocking and rotating products in coolers, organizing and rotating product in storage rooms, and moving products from storage to the sales floor." (Doc. 46-5, at 1).

Before Marzulli started work with Thrifty, he received an employee orientation guide (the "Guide") from Adecco. (Schlaud Depo., at 48); *see also* Doc. 46-2 (Guide). Among other things, the Guide instructs employees on workplace safety. It says:

> All employees are charged with the responsibility of following all safety rules and regulations and this includes Adecco associates. For the safety and welfare of everyone, any unsafe act or practice, including the careless or unauthorized operation of machinery or equipment, is not permitted.

(Doc. 46-2, at 5). Adecco also provided employees with an informational trifold. (Doc. 46-3). The trifold reiterates the importance of following safety rules. *Id.* at 1. It states: "Although you are working on assignment at [Thrifty], you are employed by Adecco." *Id.* at 2. Schlaud testified that Adecco sought to ensure its employees who work at Thrifty do so in a safe manner, but further testified it was the client's responsibility (here Thrifty) to ensure proper training and monitoring. (Schlaud Depo., at 56).

Marzulli officially began work at the Meijer store on March 20, 2020, as a merchandiser. (Bosch Depo., at 16-17). Marzulli reported to Elizabeth Goshe, Thrifty's store manager for the Lima Meijer store. *Id.* at 18. Marzulli underwent at least 30 days of training with Goshe and other Thrifty employees. *Id.* at 20. Bosch testified that the store manager would have trained Marzulli how to properly load the cart upon his arrival to Meijer, or soon thereafter. *Id.* at 37-38. Bosch also testified that Marzulli would have been told to not load the cart above eye level, or if the cart were loaded above eye level, that he should pull, rather than push, the cart. *Id.*

Client Service Agreement Between Adecco and Thrifty

Adecco and Thrifty entered into the Agreement. (Doc. 46-1). The relevant sections are as follows:

2) <u>Staffing Services</u> As Adecco's Services to [Thrifty], Adecco will assign certain of its employees ("Associates"), with the skills [Thrifty] requests, to do [Thrifty's]

work under [Thrifty's] operational supervision. As employer of the Associates, Adecco will perform the functions of a staffing firm, including, among others:

a)  Recruiting, hiring, assigning, orienting, reassigning, counseling, disciplining, and discharging the Associates

b)  Making legally-required employment law disclosures (wage-hour posters, etc.) to them

c)  Establishing, calculating, and paying their wages and overtime based on [Thrifty's] description of duties to be performed

d)  Exercising human resources (non-operational) supervision of them

e)  Withholding, remitting, and reporting on their payroll taxes and charges for programs that Adecco is legislatively required to provide (including workers' compensation)

f)  Maintaining personnel and payroll records for them

\*\*\*

10) <u>Responsibilities</u> Each party will bear or insure only the risks and responsibilities inherent in its own business and, as permitted by law, will be obligated to pay or indemnify the other party only for claims, losses, penalties, and damages to the extent they arise directly from those risks and responsibilities in connection with business done under this Agreement, plus, to the same extent, all reasonable and necessary costs, expenses, and legal fees associated with them. Risks or responsibilities not allocated by the following lists will be borne by each party in proportion to the extent that the risk or responsibility is inherent in that party's business. Adecco will pay or indemnify for obligations arising under [Thrifty's] risks and responsibilities only to the extent that the payment obligations are caused by Adecco's failure to properly perform its functions as a staffing service under this Agreement.

a)  Adecco's risks and responsibilities include:

i.   Recruiting, selecting, and hiring Associates legally in accordance with the following laws: Fair Labor Standards Act of 1938, Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, Americans With Disabilities Act of 1990, Immigration Reform and Control Act of 1986, Vietnam Era Veterans Readjustment Act of 1974, and Rehabilitation Act of 1973

ii.  Assigning Associates to [Thrifty] that possess the qualifications [Thrifty] requests

5

    iii.     Paying Associates' agreed upon wages and providing the benefits that Adecco offers to them

    iv.     Paying or withholding all required payroll taxes, contributions, and insurance premiums for programs that Adecco is legislatively mandated to provide to Associates as Adecco's employees

    v.     Providing workers' compensation benefits or coverage for Associates in amounts at least equal to what is required by law

    vi.     Fulfilling the employer's obligations for unemployment compensation

    vii.     Complying with employment taws, as they apply to Adecco as a staffing firm

    viii.     Payment for injury to people or loss to property caused by negligent or intentional conduct of Associates, to the extent that the injury or loss is caused by Adecco's failure to properly perform the duties of a staffing service

    ix.     The risks and responsibilities of other staffing firms that Adecco retains by written contract as Adecco's direct subcontractors under this Agreement (not including staffing firms for which Adecco provides only coordination and management services, whether or not by written agreement)

b) [Thrifty's] risks and responsibilities include:

    i.     Maintaining a safe, healthy, and legal workplace for Associates

    ii.     Providing Associates with adequate instructions, assistance, supervision, time for performing their assignments and with meal and/or rest breaks required by law

    iii.     The work and work product of Associates in [Thrifty's] business or organizational activities

    iv.     Providing Associates with information, training, and safety equipment for any hazardous substances present in [Thrifty's] operations

    v.     Ensuring that [Thrifty's] fringe benefit and employee benefit plans and policies effectively exclude Associates from participation

vi.     Ensuring that the functions and duties actually performed by Associates are accurately reflected in [Thrifty's] job description and immediately notifying Adecco if such functions or duties change

vii.    The conduct of [Thrifty's] officers, employees, and agents (except to the extent [Thrifty] is immune from suit for workplace injuries covered by Adecco's workers' compensation program and suffered on agreed assignments)

viii.   The acts and omissions of Associates acting under the direction of [Thrifty's] officers, employees, or agents

ix.     Duties imposed by law on recipients of staffing services

x.      Protection and security of [Thrifty's] intellectual property

xi.     The products or services of [Thrifty's] business

xii.    Notification to Adecco of all positions filled hereunder that are or become subject to a Wage Determination, federal or state prevailing wage laws, living wage and/or special fringe benefit requirements, including but not limited to the Service Contract Act

xiii.   Losses enabled or enhanced by lack of reasonable supervision, process controls, safeguards, or backups

xiv.    Risks arising from the exposure of Associates to: cash, credit cards, check-writing materials, or negotiables; keys, merchandise, confidential information, or other valuables; sensitive or unsupervised premises; or passwords, user IDs, combinations, or PINs other than those properly issued to them

xv.     Risks arising from Associates' being allowed to travel or operate motor vehicles or machinery on assignment

(Doc. 46-1, at 4-7) (Sections 2, 10).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

7

*Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those *specific* portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

"The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003). Instead, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

### DISCUSSION

At base, the parties dispute who was responsible for Marzulli's actions that resulted in injury to Mrs. Braun. In their respective motions for summary judgment, Adecco and Thrifty/Meijer both assert that under the Agreement, each side is entitled to indemnification damages paid to Mrs. Braun. Specifically, Thrifty argues Adecco must indemnify it for any liability arising from Marzulli's conduct under Section 10(a) of the Agreement, while Adecco

contends it is entitled to indemnity from Thrifty under Section 10(b) for incidents arising from Thrifty's supervision of Marzulli. Thrifty and Meijer also argue Meijer is not a part of the contractual relationship, so Adecco's claims for contribution and indemnification should be denied. Further, Adecco argues it is entitled under to summary judgment as to Thrifty's negligence and *respondeat superior* claims because: (1) the evidence shows Thrifty controlled and trained Marzulli and (2) pursuant to Ohio's loaned servant doctrine.

For the reasons discussed below, the Court grants Adecco's Motion and grants in part and denies in part Thrifty and Meijer's Motion.

<u>Adecco's Claims Against Meijer</u>

At the outset, the Court addresses Adecco's crossclaims of contribution and indemnification against Meijer. (Doc. 21). Thrifty and Meijer's Motion for Summary Judgment asserts Adecco's claims against Meijer should be dismissed because Meijer was not a party to nor in a contract with Adecco, nor was it involved with Marzulli's employment or work. (Doc. 46, at 22-23). Adecco asserts it does not oppose Thrifty's motion "to the extent it separately seeks summary judgment on behalf of Meijer Stores Limited Partnership." (Doc. 49, at 2). Therefore, the Court grants Thrifty and Meijer's Motion as it relates to Meijer. Adecco's claims against Meijer are dismissed, and Meijer is dismissed from this case.

<u>Indemnification</u>

Both Thrifty and Adecco seek indemnification for the same incident—the injury caused to Mrs. Braun by Marzulli, an Adecco-assigned worker operating a stock cart at Meijer. Thrifty claims Adecco failed to perform its staffing duties by not training Marzulli adequately and is therefore liable for Marzulli's actions under Section 10(a)(vii) of the Agreement. Adecco, in contrast, asserts that Thrifty directed and supervised Marzulli's work and is responsible under

9

Sections 10(b)(iii) and (viii) of the Agreement. Each party moves for summary judgment on its respective claim.

Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by a court. *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993); *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991); *see also Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.*, 15 Ohio St. 3d 321, 323 (1984) ("If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.") (citations omitted). "The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 115 Ohio St. 3d 387, 390 (2007). "The intent of the parties is presumed to reside in the language they choose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996) (citation omitted); *accord State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St. 3d 559, 564 (2004). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 115 Ohio St. 3d at 390; *accord Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 246 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

However, "[e]xtrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham*, 76 Ohio St. 3d at 313-14 (citations omitted); *accord R.J. Reynolds*, 104 Ohio St. 3d at 564. Nevertheless, a court "is not permitted to alter a lawful contract

10

by imputing an intent contrary to that expressed by the parties" in the terms of their written contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 219 (2003). In other words, "[a]mbiguity exists only when a provision at issue is susceptible to more than one reasonable interpretation." *Shanesville Invs. LLC v. Eclipse Res. I, LP*, 358 F. Supp. 3d 665, 670 (S.D. Ohio 2018) (quoting *Lager v. Miller-Gonzalez*, 120 Ohio St. 3d 47, 50 (2008)).

*Section 10 Risks and Responsibilities*

Section 10 of the Agreement governs indemnification. *See* Doc. 46-1, at 5-7 (Section 10). It provides:

> Each party will bear or insure only the risks and responsibilities inherent in its own business and, as permitted by law, will be obligated to pay or indemnify the other party only for claims, losses, penalties, and damages to the extent they arise directly from those risks and responsibilities in connection with business done under this Agreement, plus, to the same extent, all reasonable and necessary costs, expenses, and legal fees associated with them.

*Id.* The successive subsections then assign specific categories of risks and responsibilities to each party. Section 10(a)(viii) makes Adecco responsible for "[p]ayment for injury to people or loss to property cause by negligent or intentional conduct of Associates, to the extent that the injury or loss is caused by Adecco's failure to perform the duties of a staffing service". Section 10(b)(iii) assigns to Thrifty the risk for "[t]he work and work product of Associates in [Thrifty's] business or organizational activities", and Section 10(b)(viii) assigns risk to Thrifty for "[t]he acts and omissions of Associates acting under the direction of [Thrifty's] officers, employees, or agents".

Thrifty argues "Adecco is required to indemnify [Thrifty] for injury to Ms. [a]nd Mr. Braun, as their injuries were caused by Adecco's failure to properly perform the duties of a staffing service, i.e. ensuring that its employee worked in a safe manner." (Doc. 46, at 20). It relies on Section 2 of the Agreement, which enumerates Adecco's functions as a staffing service:

11

2)  <u>Staffing Services</u> As Adecco's Services to [Thrifty], Adecco will assign certain of its employees ("Associates"), with the skills [Thrifty] requests, to do [Thrifty's] work under [Thrifty's] operational supervision. As employer of the Associates, Adecco will perform the functions of a staffing firm, including, among others:

   a)  Recruiting, hiring, assigning, orienting, reassigning, counseling, disciplining, and discharging the Associates

   b)  Making legally-required employment law disclosures (wage-hour posters, etc.) to them

   c)  Establishing, calculating, and paying their wages and overtime based on [Thrifty's] description of duties to be performed

   d)  Exercising human resources (non-operational) supervision of them

   e)  Withholding, remitting, and reporting on their payroll taxes and charges for programs that Adecco is legislatively required to provide (including workers' compensation)

   f)  Maintaining personnel and payroll records for them

(Doc. 46-1, at 4) (Section 2). Thrifty contends the phrase "among others" is ambiguous: "the words 'among others' could have more than one meaning, which means parol evidence is both permitted and necessary to understand the parties' intent." (Doc. 46, at 19). The extrinsic evidence it submits in support is the onboarding material (the Guide and trifold) and testimony from Adecco's corporate designee. *See* Docs. 46-2, 46-3. Thrifty also argues that Section 10(a)(viii) is more specific and thus controls over the indemnity provisions in Sections 10(b)(iii) and (viii) based on the contract interpretation principle that more specific provisions control over general ones. (Doc. 46, at 21).

Adecco contends the Agreement "expressly says that Thrifty contractually assumed the risk and responsibility for Marzulli's work and work product and for Marzulli's acts and omissions when acting under the direction of Thrifty's employees or agents." (Doc. 48, at 10). And it asserts the undisputed facts demonstrate that at the time in question, Marzulli both worked both in

12

Thrifty's business and under Thrifty's direction. *Id.* Lastly, it asserts the risks assumed by Adecco were only those risks associated with its Adecco's failure to properly perform the duties of a staffing service; it contends there is no evidence it failed to perform these duties. *Id.* at 14.

At the outset, the Court finds no ambiguity in the Agreement's language regarding Adecco's duties as a staffing service. The duties listed in Section 2 are all administrative in nature and the phrase "among others", when read in context, does not reasonably encompass site-specific safety training or operational control. As the Sixth Circuit has explained, the doctrine of *ejusdem generis* limits general phrases to the same type as the specific terms listed. "[U]nder the principle of *ejusdem generis*, the general term must take its meaning from the specific terms with which it appears." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 691 F.3d 821, 833 (6th Cir. 2012) (citing *Allinder v. Inter–City Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998)). Thrifty's argument attempts to broaden the scope of Adecco's contractual obligations under the Agreement. For example, in its reply, Thrifty cites Merriam-Webster's definitions of "orient" and "counsel" to argue Adecco's duties should be read to include site-specific safety instruction. (Doc. 50, at 3-4). But this reading stretches the language beyond its ordinary meaning. "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St. 3d 306, 307 (2007) (citations omitted). Adecco's obligations were to perform the core functions of a staffing agency, and the Agreement unambiguously places operational supervision and site-level responsibility on Thrifty. (Doc. 46-1, at 4) (Section 2).

Moreover, the factual record aligns with the contractual language. The undisputed evidence shows that Marzulli was trained on cart use by Thrifty personnel, operated the cart under Thrifty's direct supervision, and was performing duties assigned by Thrifty at the time of the incident.

13

(Bosch Depo. at 37-38). The Agreement expressly assigns workplace training and supervision to Thrifty. Section 2 states: "As Adecco's Services to [Thrifty], Adecco will assign certain of its employees ("Associates"), with the skills [Thrifty] requests, to do [Thrifty's] work under [Thrifty's] operational supervision." (Doc. 46-1, at 4). The evidence (or lack thereof) confirms Adecco had no on-site supervisory role, did not control the manner or means of Marzulli's work, and fulfilled its staffing service duties by providing a qualified worker as requested. Any alleged safety failure at the Meijer store falls squarely within Thrifty's operational responsibilities, not Adecco's administrative staffing functions.

Furthermore, Thrifty's argument that Section 10(a)(viii) is "more specific" than Sections 10(b)(iii) and (viii) is unpersuasive. The Sixth Circuit has explained that the rule favoring specific provisions over general ones applies only when a conflict between the terms exists. *Monsler v. Cincinnati Cas. Co.*, 74 Ohio App. 3d 321, 330 (1991). Here, the provisions govern different categories of risk—staffing-service failures versus operational conduct—so neither provision overrides the other.

Therefore, the Court finds Adecco satisfied its contractual duties and is not liable for indemnifying Thrifty under Section 10(a)(viii).[5] In contrast, Adecco's claim under Sections 10(b)(iii) and (viii) is supported by both the plain language of the Agreement and the undisputed facts, and Thrifty is obligated to indemnify Adecco for the injuries to Mrs. Braun.

<u>Thrifty's Negligence Claim Against Adecco</u>

Thrifty's negligence claim against Adecco fails for the same reasons discussed above regarding Thrifty's indemnity claim. Specifically, the record demonstrates that Thrifty assumed

---

5. Because Adecco bears no fault under the contract or tort law, its claim for contribution against Thrifty is also moot.

responsibility for Marzulli's on-site training, supervision, and compliance with workplace safety standards.

Under Ohio law, a negligence claim requires proof of a duty, breach, causation, and damages. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St. 3d 677, 680 (1998).

As explained above, the Agreement between Adecco and Thrifty allocates staffing responsibilities to Adecco, such as recruiting, hiring, and orienting employees, but places operational control and on-site supervision entirely with Thrifty. (Doc. 46-1, at 6) (Sections 10(b)(ii), (viii)). The record confirms that Thrifty trained Marzulli on cart operation, instructed him in his day-to-day duties, and supervised him directly. (Bosch Depo., at 37-38).

Accordingly, Thrifty has not identified a duty that Adecco owed with respect to the alleged conduct or pointed to any evidence of breach. Summary judgment is therefore granted in Adecco's favor on Thrifty's negligence claim.

Thrifty's *Respondeat Superior* Claim Against Adecco

Thrifty also seeks to hold Adecco vicariously liable under a theory of *respondeat superior*, asserting that Adecco should be responsible for the alleged negligence of Marzulli, an associate it placed with Thrifty. However, this claim fails for the same reasons stated above and under the "loaned servant" doctrine.

"The loaned-servant doctrine provides that, when one employer lends his employee to another for a particular employment, the employee, for anything done in that employment, must be dealt with as the employee of the one to whom he has been lent, although he remains the general employee of the loaning employer." *Ferguson v. Dyer*, 149 Ohio App. 3d 380, 383-84 (2002). "The doctrine has various applications depending on the posture of the case. *It can apply to insulate the general employer from liability for torts committed by the employee while loaned to perform*

*work for another*". *Id.* at 384 (citing *Sanders v. Mt. Sinai Hosp.*, 21 Ohio App. 3d 249 (1985)) (emphasis added).

Here, the undisputed evidence shows that Thrifty trained Marzulli on his job duties, including cart operation, and exercised day-to-day control over his work. (Bosch Depo., at 37-38). Adecco's role was limited to recruiting, hiring, and assigning Marzulli to the position—functions that ended before any alleged misconduct occurred. (Doc. 46-1, at 4). As such, Marzulli was acting under Thrifty's control at the time of the incident and must be considered Thrifty's loaned servant for purposes of vicarious liability. Because Adecco did not retain the right to control Marzulli's on-site work, it cannot be held liable under *respondeat superior*. Summary judgment is therefore granted to Adecco on this claim.

In conclusion, the Court enters summary judgment in favor of Adecco and against Thrifty on Adecco's cause of action for indemnification, and in favor of Adecco and against Thrifty on Thirty's causes of action for negligence, vicarious liability, and indemnification. The Court further grants Thrifty's Motion for Summary Judgment in part as to its indemnification and contribution claims against Meijer, and denies it in all other respects.

Further, as Adecco correctly asserts, pursuant to Section 10 of the Agreement, Adecco is entitled to indemnification from Thrifty for all reasonable and necessary costs, expenses, and legal fees. These amounts are yet to be determined.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Adecco's Motion for Summary Judgment (Doc. 48) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Thrifty and Meijer's Motion for Summary Judgment (Doc. 46), be and the same hereby is, GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that Adecco is granted leave to file a motion regarding its reasonable and necessary costs, expenses, and legal fees pursuant to Section 10 of the Agreement on or before September 20, 2025.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: August 20, 2025