# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**MARY JANE BRAUN, et al.,**                                CASE NO. 3:22 CV 1525

      Plaintiffs,

      v.                                             JUDGE JAMES R. KNEPP II

**THRIFTY RETAIL SERVICES, LLC, et al.,**
                                                           **MEMORANDUM OPINION AND**
      Defendants.                                **ORDER**


### INTRODUCTION

Pending before the Court is third-party Defendant Adecco USA, Inc.'s ("Adecco") Motion for Indemnification. (Doc. 55). The matter is fully briefed and decisional. *See* Docs. 56, 57.[1] Jurisdiction is proper under 28 U.S.C. § 1332. For the reasons discussed below, the Court grants Adecco's Motion.

### BACKGROUND

This case arises from an incident at a Meijer store in Lima, Ohio, during which Plaintiff Mary J. Braun was struck by a stocking cart being pushed by an employee. *See* Doc. 8, at 6–7. Thrifty Retail Services, LLC ("Thrifty") is a services contractor that provides in-store merchandising exclusively to Meijer, with Thrifty providing managers in every Meijer location to oversee operations. (Doc. 45-1, at 3, 5). Adecco is a staffing agency that would, at the request of

---

1. Thrifty additionally filed a Motion for Leave to File Surreply *Instanter*. (Doc. 58). Thrifty's proposed sur-reply responds to the characterizations Adecco makes in its reply about Thrifty's opposition, framing such characterizations as "new allegations." *Id.* at 2. It appears to be for the sole purpose of protecting certain appellate arguments as to this Court's prior Opinion. *See id.*; Doc. 58-1. Because alleged mischaracterization of a party's brief does not constitute new argument, Thrifty's Motion (Doc. 58) is denied.

Thrifty, assign Thrifty employees, or "Associates" to perform work under Thrifty's operational supervision. (Doc. 46-1, at 4).

Plaintiffs, Mary Braun and her husband, Robert Braun, filed suit against Meijer and Thrifty for negligence. (Doc. 8). Thrifty then filed a Third-Party Complaint against Adecco, asserting claims for direct negligence, *respondeat superior* liability, and indemnification (Doc. 14, at 3–6); Adecco asserted cross claims against Thrifty and Meijer for contribution and indemnification against Thrifty and Meijer, and contractual indemnity solely against Thrifty (Doc. 21, at 10–12).

In July 2024, Plaintiffs settled their claims against all Defendants. *See* Doc. 41. In August 2025, on cross-motions for summary judgment, this Court resolved the remaining claims at issue between the entities, including: Thrifty's claims against Adecco for direct negligence, *respondeat superior* liability, and indemnification; Adecco's claims for contribution and indemnity against Thrifty and Meijer; and Adecco's claim for contractual indemnity against Thrifty. *See* Doc. 54.

Relevant to this Motion, this Court found in favor of Adecco as to its claim for indemnification against Thrifty based on a Client Service Agreement (the "Agreement") between the parties. *See id.* In that Opinion, this Court determined "Adecco is entitled to indemnification from Thrifty for all reasonable and necessary costs, expenses, and legal fees." *Id.* at 16. This Court then granted Adecco leave to file a motion regarding those costs and fees. *Id.* at 17. Adecco's pending Motion for Indemnification seeks to clarify the amount to which it is entitled and compel payment of such from Thrifty. *See* Doc. 55.

As discussed below, this Court finds Adecco entitled to $230,542.33 in indemnification from Thrifty.

**DISCUSSION**

Adecco's Counterclaim and Motion assert Thrifty is contractually liable to Adecco for "any and all losses, damages, liabilities, and expenses, including reasonable attorneys' fees and costs, Adecco incur[red] in connection with this lawsuit." (Doc. 55, at 3). Adecco seeks indemnification from Thrifty in the amount of $230,542.33. *Id.* at 9. This sum consists of the legal fees and expenses incurred during the pendency of this case, $77,609.00 and $2,933.33 respectively, and the portion of the settlement with the Brauns originally borne by Adecco, equal to $150,000. *See id.* at 3, 9.

Thrifty does not dispute the indemnification Adecco requests for the cost of its settlement against the Brauns or the attorneys' fees accrued prior to it.[2] However, Thrifty argues certain attorneys' fees and costs incurred by Adecco are not covered under the Agreement. It claims Adecco's total indemnification should not exceed $200,814.54. (Doc. 56, at 1). Thrifty's opposition specifically takes issue with attorneys' fees and costs associated with: (1) the determination of Marzulli's loaned servant status[3] and (2) the indemnity dispute itself—essentially contesting fees and costs incurred after Defendants collectively settled with the Brauns. *See id.* at 4–8.

The Agreement

This Court's prior Opinion found Thrifty obligated under the Agreement to indemnify Adecco for all reasonable and necessary costs, expenses, and legal fees related to this case as is

---

2. In its sur-reply, Thrifty clarifies its lack of argument as to this portion is not for want of disagreement. *See* Docs. 57, 58. Rather, it notes the proper ear for such an argument is with the Sixth Circuit if they choose to appeal this Court's prior opinion. (Doc. 58, at 12).

3. The determination of the loaned servant status of Marzulli, the employee who struck Mrs. Braun, was essential to the resolution of both Adecco and Thrifty's motions for summary judgment. *See* Doc. 54, at 15–16. The resolution of such issue determined which party was liable to the Plaintiffs, and thus to each other for indemnification.

3

appropriate under the Agreement. (Doc. 54, at 11–14). The Court did not, however, evaluate the more specific questions of attorneys' fees with respect to certain phases of this litigation. It does so now.

Because this case is before the Court on diversity jurisdiction, Ohio law applies to the interpretation of the Agreement. *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011) ("A federal court sitting in diversity must apply the law of the highest state court if that court has ruled on the matter in dispute; otherwise, the court may rely on case law from lower state courts."). Under Ohio law, the interpretation of written contract terms is a matter of law fit for initial determination by a court. *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993). "The role of courts in examining contracts is to ascertain the intent of the parties." *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 115 Ohio St. 3d 387, 390 (2007). "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996); *accord State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St. 3d 559, 564 (2004). "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *City of St. Marys*, 115 Ohio St. 3d at 390.

Section 10 of the Agreement ("indemnification provision") governs indemnification between the Parties. *See* Doc. 46-1, at 5–7. It provides:

> Each party will bear or insure only the risks and responsibilities inherent in its own business and, as permitted by law, will be obligated to pay or indemnify the other party only for claims, losses, penalties, and damages to the extent they arise directly from those risks and responsibilities in connection with business done under this Agreement, plus, to the same extent, all reasonable and necessary costs, expenses, and legal fees associated with them.

*Id.* at 5. Section 10(b)(iii) assigns to Thrifty the risk for "[t]he work and work product of Associates in [Thrifty's] business or organizational activities," and Section 10(b)(viii) assigns risk to Thrifty

4

for "[t]he acts and omissions of Associates acting under the direction of [Thrifty's] officers, employees, or agents." *Id.* at 6.

The Agreement requires Thrifty to indemnify Adecco for "all reasonable and necessary costs, expenses, and legal fees associated with" any "claims, losses, penalties, and damages" which "arise directly from [the] risks and responsibilities in connection with business done under [the] Agreement." *Id.* at 5. The Agreement further provides Thrifty's "risks and responsibilities" include workplace training and supervision. *Id.* at 4. This Court determined the claims brought by the Brauns were based on an alleged safety failure at the Meijer store, and found such allegations fall "squarely within Thrifty's operational responsibilities." (Doc. 54, at 14).

Thus, "all reasonable and necessary costs, expense, and legal fees associated with" the Brauns' claims are recoverable under the indemnification provision of the Agreement. *Id.* at 16; Doc. 46-1, at 5. Below, the Court discusses the appropriateness of costs and fees, and the parties' arguments relating thereto, in three steps: (1) the recoverability of the settlement amount paid to the Brauns; (2) legal fees during the pendency of this litigation; and (3) the reasonableness of such costs and fees.

*Settlement Amount*

The amount Adecco paid in settlement to the Brauns easily falls within the bounds of recovery here. Under Ohio law, the right to indemnification is not extinguished by a voluntary settlement before a legal determination of liability is made. *See, e.g.*, *Globe Indem. Co. v. Schmitt*, 142 Ohio St. 595, 604 (1944). "However, the one seeking indemnity, after making voluntary settlement, must prove that he has given proper and timely notice to the one from whom it is sought, that he was legally liable to respond[,] and that the settlement effected was fair and reasonable." *Id.*

Here, Adecco gave notice to Thrifty of their indemnification claim by filing their counterclaim. Adecco was brought into the lawsuit by Thrifty who claimed Adecco was responsible to Plaintiffs for their claims, and, in conjunction with Thrifty, Adecco then settled with Plaintiffs to resolve those claims. *See* Docs. 14, 41. This Court then found Thrifty would be legally liable for said claims. *See* Doc. 54, at 17. Left for determination, then, is whether the settlement was fair and reasonable. It was. Defendants paid, in total, $300,000 to Plaintiffs for the release of all claims, including, *inter alia*, Mrs. Braun's claims for direct negligence, *respondeat superior* liability, vicarious liability, and premises liability, and Mr. Braun's claim for loss of consortium. *See* Docs. 8, 41.

Ohio law precludes an indemnitor who denied its contractual obligation to indemnify from objecting to the reasonableness of the settlement in the absence of a showing of fraud. *See Sanderson v. Ohio Edison Corp.*, 69 Ohio St. 3d 582 (1994); *see also Andersons, Inc. v. Adam Wholesalers of Toledo, Inc.*, 1999 WL 715884 (Ohio Ct. App.) (holding that an indemnitor who refused to defend an indemnitee cannot later contend that the settlement is unfair and unreasonable). And, regardless, the settlement provided for the release from multiple causes of action which included claims requesting compensation for emergency "medical care," "permanent injury," "physical pain, suffering," "severe mental anguish," permanent disability, and loss of support. *See* Doc. 8, at 7–9. There is no basis for this Court to conclude the settlement of such claims for a total of $300,000 was unreasonable.

Thus, the Court finds Adecco entitled to indemnification of the cost it paid for settlement with Plaintiffs.

*Legal Fees and Costs Post-Settlement*

Thrifty's disagreement as to the amount of attorneys' fees and costs owed lies with those Adecco accrued after the parties settled with the Brauns. *See* Doc. 56. In sum, Thrifty argues the issues raised at summary judgment, specifically determination of liability and the indemnity obligation itself, are not recoverable under the Agreement. It contends the ultimate issue as to liability, the determination of Marzulli's loaned servant status, is a "preliminary legal question that must be resolved before liability can be assigned for a tort," and the indemnification clause of the Agreement "only applies to actual claims, losses, penalties, and damages—not legal questions that precede them." *Id.* at 4. It further argues the Agreement creates no express duty to fund disputes over the indemnity itself. *Id.* at 5.

In support, Thrifty cites *Shelly Co. v. Karas Properties* for the proposition that "[a]ttorney fees are generally not recoverable in a breach of contract action." 2012 WL 5877556, at *8 (Ohio Ct. App.); Doc. 56, at 6. It further attempts to distinguish Adecco's citation of *Allen v. Standard Oil Co.*, arguing *Allen* requires proof of wrongful refusal of indemnification for attorneys' fees to be recoverable and suggesting some element of malicious intent is required. *See* Doc. 56, at 6 (citing *Allen v. Stand. Oil Co.*, 2 Ohio St. 3d 122 (1982)).

But Thrifty's contentions are misplaced. As Thrifty itself notes, *Shelly* provides an exception for contracts which specifically provide for the recovery of attorneys' fees. *See Shelly*, 2012 WL 5877556, at *8 ("As exceptions to that rule, recovery of attorney fees may be permitted if . . . there is an enforceable contract that specifically provides for . . . attorney fees."). And, as Adecco notes in reply, *Allen* does not require any specific mental state in the wrongful refusal of a party to indemnify. (Doc. 57, at 3). Rather, *Allen* and its progeny simply stand for the proposition that a party to an indemnification agreement is entitled to attorneys' fees in effectuating said

indemnification where one must incur fees to enforce said agreement after another party's refusal to comply. As the Supreme Court of Ohio has explained:

> We can see no reason why an indemnity agreement which expressly allows for the recovery of attorney fees should be treated any differently from the indemnity agreement in *Allen* which did not expressly allow for the recovery of such expenses, but which was, nevertheless, held to allow for such recovery. In both cases, the indemnitor's alleged wrongful refusal to honor its obligations caused the indemnitee to incur legal expenses in order to vindicate its right to indemnity. Accordingly, we hold that an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy. In the event that the indemnitor wrongfully refuses to honor its obligation, the indemnitee may recover its legal expenses."

*Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St. 3d 238, 242 (1987).

Further, the Agreement explicitly provided indemnification included *all* reasonable and necessary legal fees under the indemnification provision that are *associated with* claims arising directly from another party's risks and responsibilities. The use of "all" in relation to attorneys' fees and costs necessitates a broad reading. *See, e.g.*, *Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x. 513, 522 n.6 (6th Cir. 2010) ("The use of the term 'all' in an indemnity clause has been interpreted to provide for the *broadest possible indemnification*. . . . Indeed, the Supreme Court of Ohio has stated that 'the word "any" means one that is selected *without restriction* or *limitation of choice*.'" (first quoting *Perry Drug Stores v. NP Holding Corp.,* 243 F. App'x. 989, 995 (6th Cir. 2007), and then quoting *Davis v. Davis*, 115 Ohio St. 3d 180, 873 N.E.2d 1305, 1309 (2007) (citation modified))). "All" fees *associated* with a covered claim logically includes fees which accrue while determining liability for the basis of such claim. And the parties put no limiting language to the contrary in this broad indemnification provision. *See United Gulf Marine, LLC v. Cont'l Refin. Co.*, 2019 WL 931823, at *6 (Ohio Ct. App.) (holding where "the parties did not limit the recovery of attorney fees to claims, demands, suits, or losses from third parties or from either party's wrongful refusal to defend an action against an indemnitee," the indemnification

agreement covered attorneys' fees accrued during successful pursuit of indemnification against each other).

Thrifty brought Adecco into this suit, based on the Brauns' claim regarding Thrifty's own risks and responsibilities under the Agreement, by way of its Third-Party Complaint. Such complaint alleged Adecco was responsible for a claim under the Agreement. *See* Doc. 14. It required Adecco to incur costs, expenses, and legal fees in relation thereto before, during, and after settlement of the underlying claim. While Thrifty attempts to get around this fact, determining who bears a responsibility under the Agreement for a claim is, in fact, "associated with" the claim arising directly from the risks and responsibilities Thrifty assumed under the indemnification provision. *See* Doc. 46-1, at 5–7. The indemnification provision's broad language necessitates such a conclusion.

Thus, Adecco is entitled to all reasonable attorneys' fees and costs associated with the claim, including those incurred after settlement with the Brauns.

*Reasonable Fees*

Attached to Adecco's Motion is a final itemized bill statement (Doc. 55-3) and the declaration of Matthew J. Lautman, a shareholder at Houston Harbaugh, P.C., a Pittsburgh-based law firm (Doc. 55-4). Lautman's declaration lists the names, positions, and rates of each individual attorney and staff member billing on the case. *See* Doc. 55-4, at 3. He states the single paralegal billed at an average rate of $135.06 per hour, the two associates billed at rates of $150.00 and $175.00 per hour, respectively, the of counsel attorney billed at a rate of $275.00 per hour, and the two shareholder attorneys billed at averages of $215.35 and $315.27 per hour.[4] *Id.* He further

---

4. Individuals whose rates changed during the pendency of the litigation were averaged. (Doc. 55-4, at 3).

9

declares these hourly billing rates are reasonable based on the community's market rates, the type of litigation at hand, and each individual's experience. *Id.* at 4.

Thrifty does not object to or challenge the hourly rates, credentials, or expertise of counsel. And the Court finds the hourly rates billed by the attorneys, of counsel, and paralegal on this matter to be within the customary hourly rates of practitioners with similar titles and experience. Thus, the Court finds Adecco entitled to indemnification in the amount of $230,542.33, the total of the settlement cost with the Brauns and Adecco's requested attorneys' fees and expenses incurred throughout this litigation.

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Thrifty Motion for Leave to File Surreply *Instanter* (Doc. 58) be, and the same hereby is, DENIED.

FURTHER ORDERED that Adecco's Motion for Indemnification (Doc. 55) be, and the same hereby is, GRANTED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE
Dated: March 31, 2026